IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                    Case Nos.:    3:06cr460/MCR
                                                     3:09cv190/MCR/EMT

DASHANE LAUREL

---

### REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 128).  The Government has filed a response (doc. 136), and Defendant has filed a reply (doc. 137).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied and dismissed.

### BACKGROUND

Defendant Dashane Laurel and co-Defendant Betty Sylvester were charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (Count One) and possession with intent to distribute 500 grams or more of cocaine on a date certain (Count Two) (doc. 13).  The court granted the Government's motion to sever the trials which was predicated upon its intent to use Defendant Laurel's post-arrest statement/confession in its case against him, because this statement would have incriminated both Ms. Sylvester and Defendant (docs. 24, 25).  Defendant was convicted after a jury trial at which he was represented by appointed counsel Clinton Couch (docs. 55, 57).

The trial evidence was set forth in detail in the Government's response, and need not be repeated at length herein (*see* doc. 136 at 4–12).  Briefly, however, the evidence established that co-Defendant Betty Sylvester began selling cocaine to government witness Byron Washington within days of his release from prison in April of 2005.  At first, Washington traveled to Atlanta where Sylvester resided to acquire the cocaine, but once he was placed on house arrest, Sylvester traveled to Florida to make deliveries, for an additional fee.  Sylvester initially traveled alone, but after having been robbed, she began bringing someone else with her, and nine times out of ten that individual was Defendant Laurel, who was also from Atlanta.  Washington estimated that he obtained between 100 and 150 kilograms of cocaine from Sylvester in five and ten-kilogram increments before he was rearrested in November of 2006.  After Washington was arrested, his girlfriend Rosalyn Campbell was in contact with Sylvester.  Campbell set up a controlled purchase of two kilograms of cocaine in hopes of helping Washington's case.  It was during the course of this controlled purchase that Laurel and Sylvester were arrested in DeFuniak Springs, Florida (*id.*).  Defendant testified in his own behalf at trial, essentially denying any involvement in or knowledge of Sylvester's illegal activities, stating that he had merely ridden along to meet girls (*see* doc. 110 at 219–41) .

The jury found Defendant guilty (doc. 57).  It specifically found that the conspiracy alleged in Count One involved less than five kilograms but five hundred or more grams of cocaine, and with respect to Count Two that the conduct involved the same amount (*id.*).  Ms. Sylvester was also convicted at a separate jury trial (docs. 49, 52).

In preparing the Presentence Investigation Report ("PSR"), the Probation Officer calculated Defendant's base offense level as 36 based on his responsibility for 100 kilograms of cocaine.  He received a two-level upward adjustment for obstruction of justice and thus had a total offense level of 38.  Defendant had two criminal history points for prior convictions, and he committed the instant offense while on probation so an additional two points were assessed (PSR ¶¶ 53–56).  His criminal history category was III (PSR ¶ 57).   The applicable guidelines range was 292 to 365 months.

Defendant objected to the quantity of drugs attributed to him and to the obstruction of justice adjustment (PSR ¶¶ 109–110, 113–114) .  At sentencing, counsel made several other arguments in mitigation including that Defendant had not been described or alluded to by other conspirators, that

the time frame of the indictment was too broad because for the first 30 days of the conspiracy one of the main participants was incarcerated, that law enforcement's version of Defendant's confession was suspect because it had not been recorded, and that Defendant had never been in actual possession of contraband (doc. 111 at 2–12). The court overruled the defense objections (*id*. at 18) and sentenced Defendant at the lowest end of the guidelines range to a term of 292 months imprisonment followed by four years supervised release, and a special monetary assessment of $200 (*id.* at 27).

Defendant filed a notice of appeal the same day, even before final judgment was entered, and a second notice of appeal after the clerk entered judgment (docs. 82, 88). Defendant retained attorney Ross. A. Keene as appellate counsel (doc. 117). Counsel challenged the sufficiency of the evidence, the quantity of cocaine attributed to Defendant, and the application of the obstruction adjustment. The Eleventh Circuit found that the jury was entitled to conclude that the opposite of Defendant's testimony was true and convict him on both counts, but that even without his testimony there was sufficient evidence to support his conviction on each charge (doc. 125 at 5–6). It also found that the district court did not clearly err in determining the amount of cocaine attributable to Defendant (*id*. at 8) and that the district court properly applied the obstruction of justice enhancement pursuant to § 3C1.1 for Defendant's perjured testimony at trial (*id*. at 9–10). His convictions and sentence were affirmed.

The mandate issued on February 3, 2009, and Defendant's motion to vacate was docketed on April 24, 2009.[1] In the present motion, Defendant contends that both trial and appellate counsel were constitutionally ineffective and separates his arguments into five grounds for relief, one of which contains nine subparts. He asks for an evidentiary hearing on his claims, and as relief, requests that his convictions and sentence be set aside. The Government opposes the motion in its entirety, including Defendant's request for an evidentiary hearing.

---

[1]The timeliness of the motion is not at issue. The court does note, however, that defendant did not complete the certification on the motion regarding the date the motion was placed in the prison mailing system. The accompanying memorandum was signed "March 20, 2009," and the envelope containing defendant's submissions was postmarked April 22, 2009.

# LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 Fed. Appx. 290 (11th Cir. 2005).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was

unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007).  In applying Strickland, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting

effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)).  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id.

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 Fed. Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable

lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

**Grounds One and Two–Ineffective assistance of appellate counsel**

Defendant maintains in his first and second grounds for relief that appellate counsel should have argued that his due process and Sixth Amendment rights were violated because the trial court did not afford him the time and opportunity to secure "counsel of choice."

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). Nevertheless, because the essential aim of this provision is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," a defendant's right to the counsel of his choice is not absolute. Wheat v. United States, 486 U.S. 153, 159 (1988) (noting some of the circumstances in which the right to counsel of choice is "circumscribed"); *see also* United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994). The right to counsel of choice also does not extend to defendants who require counsel to be appointed for them. Gonzalez-Lopez, 548 U.S. at 151 (citing Wheat, 486 U.S. at 159; Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 626 (1989)). In this case, although Defendant had court appointed counsel, he did not seek another court appointed attorney. Rather he sought a continuance in order to retain counsel.

The granting of a continuance under such circumstances is not automatic. The Eleventh Circuit has stated that "[w]hether a denial of a request for continuance to obtain counsel is violative of the Sixth Amendment guarantee of the right to counsel must be resolved on a case by case basis, depending upon the particular circumstances, including the reasons for the request presented to the trial judge." United States v. Graham, 643 F.3d 885, 893 (11th Cir. 2011) (quoting United States v. Terry, 449 F.2d 727, 728 (5th Cir. 1971)). The Graham court went on to note that not every denial of a request for continuance is  a denial of due process because the trial court must heed the "delicate balance between the defendant's right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice." *Id.* (quoting United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005)); *see also* Morris v. Slappy, 461 U.S. 1, 11–12 (1983) (noting the broad discretion given to trial courts in matters of continuances; "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel").

Before jury selection, Defendant personally addressed the court and asked that the court "call it off until I get a paid lawyer because my family is in the process of doing that" (doc. 104 at 3). The

court expressed reluctance, indicating that the case was set for trial that day, and Defendant's attorney Clinton Couch was there, presumably prepared to proceed (*id.*). Counsel assured the court that he was prepared and explained that Defendant had requested that counsel do something that he felt he did not have legal authority to do, and he believed that was the reason Defendant wanted a different attorney (*id.*). The court placed Defendant under oath to inquire into the reasons for his request (*id*. at 9).

After he was placed under oath, Defendant indicated that Mr. Couch was "a good attorney" and he had "nothing against him," but that Defendant had something that he wanted counsel to take into consideration, and counsel had advised him that he could not take the position Defendant wished him to take (doc. 104 at 10). Counsel explained to the court that his client wanted him to file a motion to dismiss on grounds that counsel found to be "wholly insufficient" and "not even a colorable argument" (*id.*) Counsel indicated that he was hesitant to disclose much of Defendant's argument in open court for fear of prejudicing his client's case, but offered to provide Defendant's notes for the court's in camera review (*id.* at 11). Instead, the court excused the Assistant United States Attorney from the courtroom so it could hear Defendant's concerns (*id.*).

After the Government's attorney left the courtroom, counsel explained that Defendant had asked him to file a motion to dismiss contending that the only evidence against Defendant was the testimony of an officer who claimed that Defendant confessed, but that the officer had failed to record the confession in writing or on audio or videotape (doc. 104 at 11). Defendant also had told counsel that in co-defendant Sylvester's initial statements to law enforcement, Sylvester said that Defendant had no involvement in the conspiracy or knowledge of the reason for their trip to Florida (*id.* at 11–12). Finally, counsel said that Defendant had provided him with case law stating that a passenger in a vehicle who had no access to the trunk of the vehicle, and in whose presence the trunk had not been opened could not be in actual or constructive possession of any contraband in the trunk (*id.* at 12). Counsel related to the court that he had explained to Defendant that there might be testimony that Defendant was present when the trunk was opened, which would then raise a factual issue and that could support an argument for a judgment of acquittal or an argument to the jury rather than provide the basis for a motion to dismiss (*id.*). The court informed Defendant that had counsel presented the motion that Defendant requested it was "not likely that it would have been

granted," and that in this event the court would have informed Defendant via an order, that factual matters regarding the sufficiency of the evidence should be presented after the Government's case via a motion for judgment of acquittal (*id.* at 13).[2]  It further explained that the arguments Defendant sought to make were not legal determinations for the court to make pretrial (*id.* at 14).  Defendant indicated that he understood (*id.*).  The court further noted that it had heard nothing to give it any concern about Mr. Couch's representation of Defendant, and that Defendant appeared to be satisfied with Couch's representation of him, except for the matter of the motion to dismiss (*id.*).  Defendant concurred and did not pursue the issue of obtaining new counsel (*id.*).  The court stated that in light of the issue that was involved, its understanding of the issue and the fact that it was not raised until the morning of jury selection, to the extent there was a motion for new counsel it was denied (*id.* at 14–15).

Defendant now points out that he hired counsel of his choice two weeks after his trial as proof of his intent to hire new counsel (doc. 128, memo at 17; Defendant's declaration at 5).  It appears that this attorney was retained for appellate purposes as he did not appear in Defendant's behalf at sentencing, although he would have had ample time in which to do so.  Defendant further argues that it was not necessary to show that he would have derived any benefit from the assistance of counsel of his choice, that the mere denial alone was sufficient.

Although the Supreme Court has stated that a choice-of-counsel violation occurs whenever the defendant's choice is wrongfully denied, it also acknowledged the qualifications or limitations on the right to counsel of choice, including the interest of fairness and the trial court's wide latitude in managing the demands of its calendar.  Gonzalez-Lopez, 548 U.S. at 150, 151–52.  In this case, with respect to the issue of fairness, the district court resolved the only reason Defendant advanced for his desire for a continuance in order to secure new counsel.  The court even provided Defendant with an "advisory ruling," explaining what its ruling would have been had counsel moved to dismiss the case on the basis advanced by Defendant.  After the court explained how it would have ruled on the hypothetical motion, Defendant appeared satisfied and did not pursue the issue further.  In

---

[2]Counsel ultimately made this argument in support of his motion for judgement of acquittal, albeit unsuccessfully (doc. 110 at 216–18).

denying Defendant's request for new counsel, the court considered not only the timing of Defendant's request but also the substance or basis for the request.  Therefore, in accordance with the foregoing law, there was no denial of due process, and appellate counsel was not constitutionally ineffective for his failure to make such an argument.  *See* Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984); Lambrix v. Singletary, 72 F.3d 1500, 1507 (11th Cir. 1996); United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000).  Defendant is not entitled to relief.

**Grounds Three and Four– Ineffective assistance of trial counsel, pre-trial**

In Ground Three, Defendant contends that trial counsel rendered ineffective assistance by failing to explain that Defendant could enter a guilty plea without cooperating with the Government, and by failing to explain to him the difference in how the sentencing guidelines would apply to his case if he entered a guilty plea as opposed to being convicted after a jury trial.  He contends that the lack of explanation affected his decision to proceed to trial.

In his memorandum, Defendant admits that counsel advised him to become an informant and witness on more than one occasion, but states he never advised Defendant that he could enter a guilty plea without doing so (doc. 128, memo at 23, and declaration at 1, 2).  Defendant asserts that had he known he was facing 25 years in prison based upon a conviction after a jury trial, with the possibility of reducing that sentence by as much as twelve to fifteen years by pleading guilty, "he would have insisted on entering the guilty plea" (doc. 128, memo at 23).

The elements of conspiracy under § 846 are (1) an agreement between the defendant and one or more persons, (2) to either commit an unlawful act, or to commit a lawful act by unlawful means. United States v. Arias-Izquierdo, 449 F.3d 1168, 1182 (11th Cir. 2006) (*citing* United States v. Toler, 144 F. 3d 1423, 1426 (11th Cir. 1998).  The government need not prove that Defendant knew every detail or participated in every stage of the conspiracy, United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002) (*citing* United States v. Diaz, 190 F.3d 1247, 1254 (11th Cir. 1999)). However, the government must prove that Defendant "knew the essential nature of the conspiracy." *Id.* (*quoting* United States v. Payne, 750 F.2d 844, 859 (11th Cir. 1985)).  And, direct evidence of a formal agreement is not required; rather "a common purpose and plan may be inferred from a development and collocation of circumstances."  United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001); United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998) (crime of conspiracy

is "predominantly mental in composition," thus government may demonstrate by circumstantial evidence "a meeting of the minds to commit an unlawful act") (citations omitted); Arias-Izquierdo, 449 F.3d at 1182 (*citing* Toler, 144 F. 3d at 1426).

Before accepting a guilty plea, Rule 11 of the Federal Rules of Criminal Procedure requires that the court determine that the plea is voluntary and that there is a factual basis for the plea.  Fed. R. Crim. P. 11(b)(2) and (3).  This typically requires an admission of guilt (*cf.* North Carolina v. Alford, 400 U.S. 25, 38 & n.10 (1970) (upholding guilty plea by a defendant who maintained his innocence but sought to avoid death penalty in murder case)).  Defendant's suggestion that he would, or could, have entered a guilty plea despite his sworn trial testimony denying any knowledge of or involvement in transporting or possessing cocaine is suspect.  In fact, it suggests to the court that his testimony may have been perjured.  Alternatively, if Defendant's protestations of innocence at trial are to be believed, he would have been required to perjure himself to enter a guilty plea.  In any event, it is most likely that this claim is evidence of post-sentencing remorse and disappointment in what he believes to be an unexpectedly harsh sentence rather than an accurate depiction of his state of mind at the relevant time.[3]  This conclusion is further buttressed by Defendant's assertion at jury selection that he wanted the court to continue the trial so he could get another attorney, with the clear implication being that the attorney would represent him at a trial.  He made no mention of a desire to enter a plea even after the court explained what its position would be on the motion to dismiss.

In Ground Four, Defendant contends that trial counsel was constitutionally ineffective because he failed to timely move for a continuance so Defendant could secure counsel of his choice.  Counsel notes in his affidavit that his client had told him that he wanted to hire private counsel, but neither Defendant nor anyone else gave counsel any information suggesting that this was likely to

---

[3] In his memorandum, Defendant refers to himself as a "first time drug offender" and references his "cultural" familiarity with street knowledge about the drug trade, including the fact that first offenders are "routinely afforded probation or 3 to 10 year sentences" for their first offense (doc. 128, memo at 26).  He also notes that "neighborhoods are full of persons on probation and parole for drug crimes" including individuals such as witnesses Washington and Roulhac who, despite numerous convictions, served little or no prison time, with the clear implication being that he "expected" to receive a comparative sentence for his involvement.

occur, and that it was not until jury selection when Defendant broached the subject again (doc. 136, att. A at 2–3). Counsel states that before this point that he would not have had a good faith basis to move for a continuance.

As discussed above, Defendant's only expressed basis for dissatisfaction with counsel of record and his desire for a new attorney was counsel's refusal to file the motion to dismiss Defendant requested. And, as also discussed previously, in denying Defendant's motion for new counsel, the court considered not only the timing of Defendant's motion for new counsel, but also the underlying reason for his request. After the court explained what its ruling would have been on the hypothetical motion to dismiss, Defendant appeared satisfied and did not pursue the issue further. Although not dispositive of this matter, the court notes that even in Defendant's supporting memorandum he has identified no particular benefit that would have resulted from hiring counsel of choice to represent him before the district court, or any other reason why he wanted to retain private counsel. *See* Morris v. Slappy, 461 U.S. 1, 9–10 (1983) (upholding reasonableness of trial court's conclusion that the efficient administration of justice justified denial of the motion for continuance where counsel was prepared and reason for requested delay was defendant's mere preference for different attorney). Absent any information to support his request for different counsel, or any meaningful evidence that such hiring was forthcoming, there is no guarantee that his request for a continuance would have been granted. This is particularly true in light of the co-Defendant's pending trial involving the same witnesses. Defendant again has failed to show his entitlement to relief.

**Ground Five–Ineffective assistance of trial counsel during trial**

This ground contains nine separate claims for relief, each of which will be addressed in turn.

1. Failure to object to composition of jury panel

Defendant contends that counsel was constitutionally ineffective because he failed to object to the fact that there was only one African-American in his jury pool. He suggests counsel could have argued that the jury selection process in his case violated the fair-cross section requirement of the Sixth Amendment, the equal protection component of the Fifth Amendment, or that the selection process failed to comply with the provisions of the Jury Selection and Service Act of 1968. Defendant states that because attorney Couch routinely practices in this court, Couch should have

known something was amiss with the jury pool in this case and raised the issue. Defendant asserts that the absence of African-American jurors was significant because part of his defense was "based on cultural imperatives," i.e., his relationship with his co-Defendant, a significantly older black woman, that "white people would not be able to grasp without an African-American presence on the jury to explain" (doc. 128, memo at 31).[4]

In its response the Government notes that counsel admits that he does not recall the number of African-Americans in the jury venire or on the petit jury, but counsel also stated that he had no cause to speculate that the venire was unconstitutionally assembled or that the jury was unconstitutionally selected. Defendant is not entitled to a jury of any particular composition. Rather, the jury wheels, pools of names, panels, or venire from which juries are drawn must not systematically exclude distinct groups in the community. *See* United States v. Green, 742 F.2d 609, 611 (11th Cir. 1984) (citing Taylor v. Louisiana, 419 U.S. 522, 538, 95 S. Ct. 692, 701, 42 L. Ed. 2d 690 (1975)). Defendant has presented no evidence of this, and in fact indicates in his reply that he "waives Ground 5(a)." Thus, there is no basis for relief.

    2. Failure to make an opening statement

Defendant contends that counsel was constitutionally ineffective for waiving opening statement (doc. 110 at 17). He admits that the evidence against him was strong, and states that counsel should have used the opening statement to "explore the only possible reasonable defense which existed," and counsel's failure to do so "deprived the jury of an explanation as to what the defense would be" (doc. 128, memo at 33; Jones v. Jones, 988 F. Supp. 1000, 1003 (E.D. La. 1997)).

---

[4]Frankly, this court does not see how the version of events presented by Defendant during his cross-examination would have been better regarded by a jury comprised even entirely of African-Americans. Defendant testified that he had met Ms. Sylvester a year or so earlier in a grocery store when he was nineteen years old and Ms. Sylvester was forty something and they hit it off. Although Defendant had previously never left the Atlanta area he accompanied Sylvester to Florida because is a self-proclaimed "gigolo" and there are "a lot of women" in Florida. Despite his alleged goal of meeting women, he packed no clothing, and he did not know where they were going or when they would be back. Defendant said he asked no questions when they made a stop at a trailer in Fort Walton Beach and Ms. Sylvester was given more money than he had ever seen in his life because it was none of his business, and that Sylvester gave him $1,000 to "hold" or "count," or to keep her company, which was recovered from his pocket at the time of his arrest (doc. 110 at 227–40).

In response, experienced defense counsel notes that he generally does not give an opening statement, the reason for this being that doing so seems only to instruct the prosecutor about the defense's case and her (the prosecutor's) weaknesses, which in turn presumably has the potential to further weaken the defense position (doc. 136, att. A at 3).

Numerous courts have held that the decision to waive opening statement is one of reasonable trial strategy. *See* Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) ("While opening and closing statements are not to be lightly waived in a capital case, it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel."); Jones v. Smith, 772 F.2d 668, 674 (11th Cir. 1985) ("The attorneys' decision to waive opening argument at the guilty phase was one of reasonable trial strategy. It left the defense uncommitted to a particular position and thus free to develop any defense that might materialize as the State presented its case."); Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (reserving opening statement is a tactical decision within the range of reasonably competent representation); United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985) (the timing of opening statement, including the decision on whether or not to make one, is a trial tactic and does not constitute a basis for a claim of ineffective assistance); United States v. Salovitz, 701 F.2d 17, 20–21 (2d Cir. 1983) (noting that trial counsel's decision to waive an opening statement is often a matter of trial strategy "and ordinarily will not form the basis for a claim of ineffective assistance of counsel"). An opening statement is sometimes described as a sort of "roadmap" for the jury to follow. Defendant has failed to show how such a "roadmap" would have altered the destination in his case. Although faced with abundant evidence against his client, counsel was able in his closing argument to draw the jury's attention to weaknesses in the Government's case and call into question the testimony of the cooperating witnesses, without telegraphing that strategy prior to trial and allowing the Government time to react to it. Counsel's strategic choice did not render his performance constitutionally deficient.

3–5. Failure to adequately investigate and prepare for trial

Defendant faults counsel for his failure to interview co-Defendant Betty Sylvester and cooperating Government witnesses Washington, Roulhac and Campbell; for his failure to attend Sylvester's jury trial to hear the witnesses' testimony; for his failure to secure a copy of Ms.

Sylvester's exculpatory statement; and for his failure to call her as a witness at trial (doc. 128, memo at 36–37, 38).  First, Defendant does not suggest what additional information counsel would have obtained from interviewing Washington, Roulhac or Campbell or listening to their testimony in Sylvester's trial, or how such information would have altered the outcome in his case.

With respect to Ms. Sylvester, counsel told the court before jury selection that his client had "reason to believe" that in her initial statements to law enforcement, Ms. Sylvester said that Defendant had nothing to do with the drug conspiracy, but that he was only there as a "ride-along" (doc. 104 at 11–12).  Even if she did make such statements, as the evidence showed at trial, not all statements to law enforcement are recorded, and there is no evidence that these allegedly exculpatory statements were ever memorialized in writing.  Counsel cannot be found constitutionally ineffective for his failure to procure something that does not exist.  Much of Defendant's argument appears predicated on the assumption that Sylvester would have provided exculpatory testimony if called as a witness at trial.  This assumption is unsupported by any basis in fact.  Counsel states in his affidavit that he talked to Sylvester with her attorney's permission, but Sylvester told counsel that she did not have anything helpful to say in Defendant's case, and if she were called as a witness, counsel "would not like what she had to say" (doc. 136, att. A at 4).  After the interview, which took place in the Marshal's holding area at the courthouse, counsel avers that he made the decision not to call Sylvester in consultation and concurrence with his client (*id.*).

In his reply, Defendant requests an evidentiary hearing to present what Sylvester would have testified to at trial (doc. 137 at 6).  He also asserts that the conversation between he and his attorney about whether Sylvester should testify "never took place" (doc. 137 at 6).   Defendant's assertion is mistaken, if not false.  The record reflects that at trial, counsel informed the court that he had been unable to talk to Ms. Sylvester until after her trial, and that based on his interview, the defense would not call her as a witness, despite the fact that she was under subpoena (doc. 110 at 77–78).  Counsel noted that he had explained the situation to his client, and Defendant understood.  The court inquired whether Defendant had discussed this with Mr. Couch, and Defendant responded in the affirmative (*id.* at 78).

Defendant has not shown that counsel's preparation or performance was constitutionally deficient and he is not entitled to relief.

6–7.  Defendant's testimony at trial

Defendant identifies several alleged failings of counsel surrounding decisions made with respect to Defendant's testimony.  Specifically, he contends that counsel did not prepare him to testify, that counsel made an "unprofessional, prejudicial decision" to call his client to testify, and that it was counsel's own manner of questioning that led to Defendant receiving the two-level adjustment for obstruction of justice.

During a recess in the trial proceedings, the district  court addressed Defendant to ensure he understood certain important rights.  It advised him that he was not obligated to present any evidence or to testify, and reminded him that the jury had been instructed that if he elected not to testify, this fact could not be held against him because it was his right not to do so (doc. 110 at 142). The court also advised Defendant, conversely, that it was his right to take the witness stand, and although it suggested that he heed his attorney's advice in this regard, the court made clear that if Defendant wanted to testify, the decision was his and his alone (*id.* at 110 at 142–43).

Defendant now claims that counsel failed to explain the operation of the sentencing guidelines and the dangers he faced by testifying.  He goes so far as to suggest that counsel should have advised him **not** to testify.  *See* United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992) (discussing counsel's obligation in advising Defendant regarding right to testify or not testify).  He claims that counsel asked him "particular questions," his responses to which were obviously used to support the obstruction adjustment.  He does not identify any specific questions, instead referring to his direct and re-direct testimony in its entirety (doc. 110 at 220–26, 240–41).  He also argues that if the substance of his testimony was what counsel prepared him for, then "counsel is admitting he advised the defendant to subject himself to a perjury enhancement" (doc. 137 at 7), a position that appears to the undersigned to be essentially an admission that he committed perjury.  Finally, Defendant repeatedly mentions the "availability of an alternate witness, Ms. Sylvester" who he maintains could have testified to the same things he testified to without subjecting him to the obstruction adjustment (doc. 128 at 43, 44; doc. 137 at 7–8, 9).  This argument again ignores the existence of counsel's on the record explanation for his decision not to call Sylvester as a witness and Defendant's understanding of and concurrence with this decision (*see* doc. 110 at 77–78).

Counsel states in his affidavit that he discussed the ramifications of Defendant's decision to testify with his client (doc. 136, att. A at 4).  He recalls that Defendant was just as adamant about testifying as he was about going to trial, and that there was little he could tell Defendant that Defendant was willing to consider (*id.*).  Counsel indicates that he neither encouraged Defendant to testify nor attempted to dissuade him, but notes that Defendant's testimony was necessary to support the defense that they proffered (*id.* at 5).  With respect to Defendant's allegation that counsel elicited testimony that resulted in an obstruction adjustment, counsel states that he is unsure what Defendant is talking about, but that the questions he asked were necessary to advance the chosen defense (*id.* at 5).

In light of the defense presented and Defendant's decision to testify, he has not shown that counsel was constitutionally ineffective.

8.  <u>Counsel's alleged impeachment of Defendant during closing arguments</u>

Defendant was arrested with $1046.00 in his possession, $1,000.00 of which originated from co-Defendant Sylvester.  He testified at trial that she told him to "hold this" and handed him the $1000 at the restaurant where they were arrested (doc. 110 at 222, 237–38), although he also testified that he told law enforcement that she "gave" him the $1000 to keep her company (*id.* at 224) or that Sylvester may have merely told him to count the $1000 (*id.* at 237–38).  He admitted that the money was already in his pocket upon his arrest (*id.* at 238).  On cross examination when asked if he had told law enforcement that Sylvester paid him to ride with her, he said he could not recall what he told law enforcement about the reason he had the $1000 (*id.* at 238–39).[5]  His position on the reason he had this money was unclear at best.

The premise of the Government's argument at closing was that its witnesses were truthful and consistent, while Defendant's position could not be believed.  It made brief reference to the $1000, asking the jury to consider whether it made sense that Sylvester would have told Defendant

---

[5]Defendant cites his request to counsel to "refresh his memory" (doc. 110 at 224) as proof that counsel did not prepare him to testify.  Defendant's memory was inconsistent.  During direct examination he could remember what he told law enforcement during the first interview but not the second, but during cross examination he denied remembering anything he had told law enforcement (doc. 110 at 224, 238–39).

to "hold this" or "count this" and he put the money in his pocket (doc. 110 at 245). Defense counsel also mentioned the money in his closing argument, noting that there was $1,000 in Defendant's pocket at the time of his arrest and rhetorically asking whether this was consistent with someone saying that an older woman wanted to bring him to Florida to meet some girls (*id.* at 258–59). Counsel said "I don't know why she paid him $1000 for this, but nevertheless, if she did, that would be consistent with him meeting girls" (*id.*). Counsel went on to argue that at "five foot nothing" the unarmed Defendant who stayed in the car during the transaction would not have been able to offer much protection (*id.* at 259), thus discrediting any suggestion that Defendant had accompanied Sylvester for protection. The Government argued in the final portion of its closing that it did not make sense for Sylvester to have paid Defendant $1000 to travel to meet girls—rather it was evidence of his participation in the drug conspiracy (*id.* 265–66).

Defendant now argues that counsel's statement amounted to an admission that the $1000 was a "payment," and that this comment—followed by counsel's statement that he "did not know why Sylvester paid Defendant"—were prejudicial to him in that it bolstered the prosecution's case and essentially told the jury that Defendant's own attorney did not believe what he said (doc. 128, memo at 46). Defendant's interpretation of this statement is not the only possible one, and he fails to look at the statement in context. While counsel's choice of the verb "paid" may not have been the best one, it was not wholly inconsistent with Defendant's testimony that Sylvester gave him the money to keep her company (doc. 110 at 224). In any event, when considered along with the overwhelming evidence presented at trial, the undersigned cannot say that this comment was so prejudicial that it undermined the outcome of the proceedings.

9. <u>Failure to call co-Defendant Sylvester to testify</u>

Defendant's final substantive ground for relief, that counsel was constitutionally ineffective because he failed to call co-Defendant Sylvester to provide exculpatory testimony with respect to drug weights, is without merit. Counsel made a reasoned decision not to call Sylvester as a witness because she would not have provided testimony helpful to the defense (doc. 110 at 77–78). Moreover, he could not have called her for the limited purpose Defendant seeks (and/or called her without the Government soliciting harmful testimony from her), and thus he was not constitutionally ineffective for his failure to do so.

**Ground Six– Cumulative Effect of Counsel's Errors**

In his memorandum, Defendant also presents an argument for cumulative error.  He asserts that the cumulative impact of counsel's deficiencies was prejudicial, and that absent these deficiencies, the outcome of his trial "might well have been different."  It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible.  *See, e.g.*, U.S. v. Ramirez,  426 F.3d 1344, 1353 (11th Cir. 2005);  United State v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993) (citing United States v. Pearson, 746 F.2d 787, 796 (11th Cir. 1984)).  However, the cumulative error doctrine is inapplicable where the district court commits no individual errors.  United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because"Twenty times zero equals zero.").  Moreover, the Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[6]  The "errors" alleged here—no opening statement, failure to present exculpatory witness testimony, failure to present corroborating witness testimony, failure to present Defendant's requested theory of defense, admission of Defendant's guilt during closing argument, discrediting Defendant's testimony during closing argument, failure to timely advise the court of Defendant's desire to hire counsel of choice—have all been found not to be error.  Thus, having found no error in any of Defendant's previously raised claims, there can be no cumulative error, and he is not entitled to relief.

## CERTIFICATE OF APPEALABILITY

––––––––––––––––––

[6]The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished).  The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

The motion to vacate, set aside, or correct sentence (doc. 128)  be **DENIED.**

At Pensacola, Florida, this 23<u>rd</u> day of  November 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  <u>See</u> 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**